Damian L. Albergo, Esq.
Albergo, Shmaruk & Kofman, LLC
15 Warren Street, Suite 20
Hackensack, New Jersey 07601
(201) 354-4999
*Attorneys for Plaintiff Eve Sales Corp.*

David S. Gold, Esq.
Elizabeth A. Carbone, Esq. (*pro hac vice forthcoming*)
Cole Schotz, P.C.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
*Attorneys for Plaintiff Marie Sharp's Fine Foods Ltd.*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVE SALES, CORP. and MARIE SHARP'S FINE FOODS, LTD.<br><br>Plaintiffs,<br><br>v.<br><br>MARIE SHARP'S, USA, LLC<br><br>Defendant. | Civil Action No.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiffs, Eve Sales, Corp. ("ESC") and Marie Sharp's Fine Foods, Ltd. ("MSFF"; together with ESC, "Plaintiffs"), complaining against Defendant, Marie Sharp's USA, LLC ("Defendant"), allege and state as follows:

### INTRODUCTION

1.      This is an action seeking declaratory relief arising from two separate agreements concerning the distribution and sale of MSFF brand food products in the United States: (a) that certain agreement dated October 26, 2017 between ESC and Thoughtleader.com. LLC (the "2017 Agreement") (a copy of which is annexed hereto as Exhibit "A"); and (b) that certain agreement

dated April 1, 2022 (but not signed by MSFF until in or about December 2022) between MSFF and Defendant (the "2022 Agreement") (a copy of which is attached hereto as Exhibit "B").

2.      The 2017 Agreement was terminated by ESC on or about May 4, 2018.  ESC seeks an order declaring the 2017 Agreement terminated, in addition to other declaratory relief.

3.      MSFF provided written notice of termination of the 2022 Agreement on or about March 15, 2024.  MSFF seeks an order declaring the 2022 Agreement terminated effective as of June 13, 2024, in addition to other declaratory relief including, but not limited to, a declaration concerning Defendant's immediate obligations upon notice of termination.

## PARTIES

4.      ESC is New York corporation with its principal address located at 945 Close Avenue, Bronx, New York.

5.      MSFF is a company organized pursuant to the laws of Belize with its principal address located at 1 Melinda Road, Stann Creek District, Belize.

6.      Defendant is a North Carolina limited liability company with its principal address located at 1976 Runnymede Road, Winston Salem, North Carolina.  Upon further information and belief, Defendant is the assumed name of and/or successor company to, Thoughleader.com, LLC.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant.  Further, the amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is greater than $75,000.00, exclusive of interest and costs.

8.      The Court has personal jurisdiction over Defendant because, at all relevant times, it has engaged in substantial business activities in the State of New York.  At all relevant times

Defendant transacted, solicited, and conducted business in New York through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New York.

9.      Venue is proper in this District under 28 U.S.C. § 1391 (b) and (c) because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendant is subject to personal jurisdiction in this District.

## FACTS

### *Background Facts*

10.     ESC is a distributor of food products with an approximately 60-year history of impeccable service, a robust customer list, and an exemplary reputation.

11.     MSFF is a family-owned and operated manufacturer with an approximately 40-year history of producing sauces, jams, and jellies using original recipes ("MSFF Products").

12.     Upon information and belief, Defendant is an entity owned and controlled by Michael Touby ("Touby"), as President, and Sonia Schilling Touby, as Chief Executive Officer.

13.     Upon information and belief, on or about April 24, 2019, Defendant formally adopted the assumed business name Marie Sharp's USA.  The Assumed Business Name Certificate describes the "nature/type of the business" as "marketing condiments."

14.     On or about April 23, 2016, Marie Sharp, the founder of MSFF was inducted into the Hot Sauce Hall of Fame at the New York City Hot Sauce Expo in Brooklyn, New York where she, along with her grandson, MSFF's Chief Marketing and Sales Director, Jody Williams, first met Defendant's President, Touby.  Shortly after that first meeting, Defendant sought to establish a business relationship with MSFF.

15.     In or about the summer of 2016, ESC first met Touby at the International Fancy

Food Show in New York City.  Touby, on behalf of Defendant, pursued a relationship with ESC in connection with, among others, the marketing, importation, distribution, and sale of MSFF Products.  ESC informed Touby it was not interested in doing business with Defendant because, among other reasons, Defendant's lack of industry experience.

16.     In or about the summer of 2017, ESC again met Touby at the International Fancy Food Show in New York City.  Touby continued to pursue a business relationship with ESC.  ESC again advised Touby that they were not interested in doing business with Defendant.  Thereafter, Touby continued to pursue ESC.

*Defendant's Relationship With MSFF*

17.     Following their initial meeting on or about April 23, 2016, Touby, on behalf of Defendant, continued to pursue a business relationship with MSFF, largely through communications with its founder, Marie Sharp.

18.     Willing to give Defendant a chance, on or about April 9, 2019, MSFF sent Defendant a draft short-form distribution letter agreement (the "2019 Letter Agreement") that did not include exclusivity language.

19.     On or about April 10, 2019, Defendant sent MSFF a revised version of the draft 2019 Letter Agreement including language appointing Defendant as "Exclusive Importer and Distributor" of MSFF Products in the United States.  MSFF did not execute that draft agreement.

20.     Later that same day, MSFF sent Defendant a revised version of the draft 2019 Letter Agreement removing the exclusivity language added by Defendant and replacing it with "Official US Representative and Distributor."  MSFF specifically advised Defendant that it did not offer exclusivity to its distributors.  Defendant accepted the change and signed the 2019 Letter Agreement.

21.     The 2019 Letter Agreement would later be replaced and superseded by the 2022 Agreement, which contained the same "Official US Representative and Distributor" language as the 2019 Letter Agreement.  There is no reference to exclusivity in the 2022 Agreement.  *See generally* Ex. B.

22.     The 2022 Agreement specifically references MSFF's "established distribution through a Master Importer, namely Eves Sales" that "supplies the existing customers of [MSFF] with [MSFF] products."  Ex. B at p. 2, ¶ 3.

23.     The 2022 Agreement further provides: "[Defendant] shall not make changes to any distribution arrangements for the Master Importer, Eves (sic) Sales." *Id.*

24.     The 2022 Agreement further provides: "[MSFF] is the Sole Owner of the Marie Sharp's brand, with [MSFF Products] manufactured in Belize, and reserves the right to make absolute decisions on any aspect of the brand, inclusive of packaging materials, raw materials or any marketing tools and campaigns." *Id.* at p. 6, ¶ 6.

25.     The 2022 Agreement further obligates Defendant to "conduct its business in a manner that reflects favorably at all times on [MSFF] Products the brand, goodwill and reputation of [MSFF] or its affiliates." *Id.* at p. 1.

26.     The 2022 Agreement is for a term of five (5) years but may be terminated "for any reason ... upon [Ninety] days' prior written notice with or without cause ...." *Id.* at p. 3, ¶ 8.

27.     The 2022 Agreement further provides: "Upon notice of termination of this Agreement for any reason, the following provisions shall apply: (a) [MSFF] shall have the right to immediately appoint another Distributor to serve existing customers and for business continuity, to continue sales efforts in the indicated Territory; (b) [MSFF] may continue to fill any orders from [Defendant] that have been accepted by [MSFF] prior to the termination of this Agreement under

the terms and conditions of this Agreement; (c) All outstanding balances owed by Distributor to Supplier shall become immediately due and payable to Supplier." *Id*. at p. 3, ¶ 9.

28.     At no point did Defendant ever advise ESC of the existence of the 2022 Agreement.

***Defendant's Relationship With ESC***

29.     In late October 2017, Touby visited ESC at its warehouse in New York, at which time Touby informed ESC that Defendant had obtained the exclusive right to distribute MSFF Products throughout the entire United States.  Touby further advised ESC that Defendant controlled pricing for MSFF Products throughout the United States.

30.     Based upon Touby's representations, ESC finally agreed to test the market and determine if it was beneficial for ESC to distribute MSFF Products.

31.     During his visit to New York in 2017, Touby presented ESC with the draft 2017 Agreement. The draft 2017 was two (2) pages and extremely vague as to the parties' respective rights and obligations.  In addition, the 2017 Agreement falsely suggested an official connection between Defendant and MSFF by using the d/b/a "Mindfully Made *or Marie Sharp's Fine Foods, Ltd.*", which is the official legal name of MSFF in Belize.  (Emphasis added.)

32.     The 2017 Agreement was signed on or about October 26, 2017.

33.     The 2017 Agreement contained no expiration date and provided both parties with the right to terminate, with or without cause, effective ninety (90) days after receipt of notice of termination.  The 2017 Agreement does not require that notice be in writing.

34.     In November 2017, ESC made a small "test" purchase of MSFF Products from inventory that Defendant had in a public warehouse.  Defendant shipped the product to ESC in New York and ESC subsequently began presenting MSFF Products to its customers throughout

the United States.

35.    In or about late April or early May 2018, ESC's principals flew to Chicago to present MSFF Products to its existing customers as well as potential customers.  During this trip, ESC discovered that, contrary to Touby's representations, Defendant neither had exclusive rights to distribute MSFF Products throughout the United States nor the right to control its pricing.

36.    During this trip, ESC also discovered that: (a) at least five (5) or more distributors were purchasing MSFF Products directly from MSFF and distributing those products throughout the United States; and (b) grocery stores were purchasing and selling MSFF Products at a price point lower than what ESC was paying Defendant for the same products.

37.    ESC immediately contacted Touby to express its dismay as to his misrepresentations concerning exclusivity and pricing, and to notify him that ESC would no longer continue doing business with Defendant.  ESC also terminated the 2017 Agreement.

38.    Following termination of the 2017 Agreement, Defendant attempted to persuade ESC to again conduct business with MSFF and Defendant.  However, ESC refused to purchase any MSFF Products from Defendant for approximately 1 ½ years thereafter.

39.    In or about late 2018 or early 2019, ESC and Defendant agreed to pursue a new joint proposal for ESC and Defendant to do business with MSFF in the United States.

40.    According to the proposal, Defendant would serve as "brand manager" but would not carry or sell MSFF Products.  Instead, ESC would act as master distributor, handling all sales fulfillment and logistics.

41.    Further, pursuant to the joint proposal, Defendant would have minimal overhead expenses and would assist ESC in increasing MSFF's sales by referring customers, opening new accounts, traveling to meet with potential customers, and increasing overall brand awareness.

42.     The joint proposal called for ESC to pay Defendant 20% above factory pricing and, as part of the 20%, Defendant would receive a 10% commission on all sales of MSFF Products by ESC, with the remaining 10% earmarked for mutually beneficial marketing efforts in connection with sales and promotions.

43.     All parties agreed to the joint proposal.  Almost immediately following, however, Defendant began making unilateral changes to the agreement.  For example, Defendant impermissibly created a direct-to-consumer e-commerce store (the "Online Store").

44.     ESC objected to the creation of the Online Store as it directly competed with ESC. Defendant agreed that it would not directly compete with ESC sales and would, instead, only sell individual bottles and/or small orders directly to consumers.

45.     After opening the Online Store, Defendant also began to accrue unapproved expenses and lost the objectivity required to be an effective national brand manager as its Online Store became its priority.  For example, during this time, there were also multiple incidents in which Touby conducted himself in a manner that placed MSFF and its brand in a negative light.

46.     In addition, Defendant began to add warehouse space, hire employees, and incur advertising expenses to drive traffic to its Online Store, all without consultation or approval from ESC or MSFF.  Defendant began spending the 10% earmarked for mutually beneficial marketing efforts solely in connection with upgrades to the Online Store, social media consultants, and advertising efforts, all to funnel web traffic to its Online Store for the sole benefit of Defendant. This investment resulted in Defendant ranking ahead of MSFF in search engine results.

47.     In March 2020, Defendant further deviated from the joint agreement by directly selling MSFF Products to an entity called Davidson Specialty Foods, which was one of ESC's preexisting, longtime customers.  Defendant also utilized sales brokers to directly compete with

ESC by, among other things, selling directly to Kroger and Walmart, which ESC planned to solicit with Defendant's assistance.  Finally, Defendant notified ESC that it would no longer refer MSFF customers to ESC and that Defendant would be independently servicing all inquiries in breach of the parties' joint sales agreement.

48.     Defendant spent nearly all of the marketing funds received from ESC to promote the Online Store, Instagram account, Instagram store, and direct customers such as Walmart and Kroger to purchase directly from Defendant, all of which ESC objected to.

49.     On other occasions, Defendant advised ESC that MSFF could not afford to extend Defendant credit for orders and regularly requested that ESC prepay for orders so that Defendant could pay MSFF early.  This too would prove to be false.  Instead, MSFF did extend credit to Defendant, but Defendant used those funds to finance its own expenses.

50.     Over the course of their relationship, Defendant also consistently made late payments to MSFF and blamed ESC for the delays.

***The Amazon Brand Registry and Transparency Program***

51.     Defendant also repeatedly lied to MSFF about the purpose and functionality of the Amazon Brand Registry program.  Instead of listing MSFF as the brand owner and administrator, Defendant, with the assistance of counsel (who is also a customer who, upon information and belief, purchases MSFF Products from ESC for resale through his own webstore), named itself brand owner and administrator of the Brand Registry.

52.     Defendant did not grant MSFF any privileges to the Brand Registry.  As required by Amazon's policies and procedures, Defendant should have named MSFF as owner of the Brand Registry and associated intellectual property.  To the extent Defendant was listed at all, they should have been listed as MSFF's "Agent."  Defendant, however, sought to use ownership and control

of the Brand Registry to fully control Amazon sales to the exclusion of MSFF, ESC, and others, and otherwise use the Brand Registry as a means to stymie fair competition in the online marketplace.

53.      Despite multiple demands by MSFF, Defendant continuously delayed transferring ownership and control of the Brand Registry to MSFF.  Defendant ultimately conceded that MSFF should be the owner and administrator of the Brand Registry and transferred it back to MSFF.

54.      Defendant abused its access, ownership, and control of the Brand Registry in other ways.  For example, Defendant provided third-party, unauthorized access to entities such as Snob Foods, which upon information and belief is owned by Defendant's attorney, Nicholas Parks, Esq. Notably, Snob Foods was a prior customer of ESC that ceased doing business with ESC and began doing business with Defendant.

55.      Upon information and belief, Defendant also unilaterally authorized the use of MSFF's intellectual property in connection with the Brand Registry and other online stores without MSFF's knowledge and/or authorization.

56.      Upon information and belief, Snob Foods sells highly discounted, expired MSFF Products with Defendant's knowledge and/or approval, subjecting MSFF to potential liability.

57.      Snob Foods also uses MSFF's intellectual property in connection with the sale of food and other products without the permission of MSFF.  Upon information and belief, the use of MSFF's intellectual property was improperly authorized by Defendant.

58.      Defendant also abused the Brand Registry by intentionally filing frivolous trademark infringement claims against ESC's customers.  ESC's customers had to contact Defendant to get the claims retracted, which Defendant used as an opportunity to solicit them into purchasing directly from Defendant.

59.     ESC sought Defendant's assistance to rectify the situation and avoid lawsuits, but Defendant was unhelpful.  As a result, ESC reached out to MSFF, the trademark owner, to rectify the situation.  In response, Defendant accused ESC of "interfering" and tried to force ESC to sign a contract barring any communication between ESC and MSFF.  ESC refused to sign that contract. When MSFF learned of this issue, MSFF notified Defendant that it had to continue working with ESC, and that MSFF would not permit Defendant to stop selling MSFF Products to ESC.

60.     In or about May or June 2023, without the knowledge and/or approval of MSFF, Defendant also enrolled MSFF in Amazon's global Transparency Program (the "Transparency Program"), something that would negatively impact MSFF's relationship with its worldwide distributors.

61.     Upon information and belief, Defendant also intentionally misused the Amazon Anti-Counterfeiting Program to frivolously accuse ESC customers of selling counterfeit MSFF Products on Amazon.com.

62.     MSFF ultimately demanded that Defendant withdraw various SKUs from the Transparency Program, which Defendant refused.  Instead of canceling the Transparency Program, Defendant offered MSFF's international vendors barcodes that would permit them to sell on Amazon, resulting in additional damages to MSFF.

63.     In light of the foregoing, among other acts, MSFF advised Defendant that it planned on withholding certain shipments to Defendant due to non-compliance and misuse of MSFF's intellectual property.  Defendant responded by threatening that Walmart would sue MSFF for interfering with Defendant's contractual relationship with Walmart.

***ESC Begins Working Directly With MSFF***

64.     As of April 2023, there was neither any exclusive distribution agreement between

MSFF and Defendant nor was there any agreement between ESC and Defendant.

65.     In or about April 2023, ESC notified Defendant that it was no longer willing to work with Defendant and thereafter began purchasing MSFF Products directly from MSFF.  Upon information and belief, Defendant was aware that ESC was purchasing MSFF Products directly from MSFF.

***Defendant's Demand Letters to MSFF and ESC***

66.     On or about March 6, 2024, MSFF received a demand letter from Defendant wherein Defendant claimed that certain sales from MSFF to ESC constituted a breach of the 2022 Agreement.  Specifically, Defendant alleged breach of exclusivity despite the fact that there is no exclusivity provided in the 2022 Agreement.

67.     On or about March 15, 2024, MSFF provided Defendant with written notice of no-cause termination in accordance with Section 8 of the 2022 Agreement.  At that time, MSFF also provided Defendant with a new, non-exclusive distribution agreement for consideration.

68.     Defendant rejected that draft agreement and, through counsel (Defendant's customer, Mr. Parks of Snob Foods), turned to threats of litigation in the event MSFF did not provide Defendant with full exclusivity throughout the United States to the exclusion of ESC and others.

69.     In response to Defendant's threats, MSFF, through counsel, attempted to negotiate a compromise.  That too was rejected, with Defendant's counsel again resorting to baseless threats of litigation based on an alleged breach of exclusivity and tortious interference by MSFF with Defendant's contractual relationship with ESC.

70.     Specifically, in an April 5, 2024 email, Defendant's counsel (Mr. Parks of Snob Foods) again claimed that MSFF tortiously interfered with its agreement with ESC, stating, in

pertinent part, that "MSFF decided early last year to breach that agreement and tortiously interfere with [Defendant's] contractual relationship with Eve Sales."

71.    Further elaborating on Defendant's position, Mr. Parks stated: "Only after Mr. and Mrs. Touby sent a letter demanding that MSFF cease their breach did MSFF decide to terminate the existing agreement.  But termination of the agreement doesn't resolve the breach or tortious interference.  If anything, [MSFF] only solidified and magnified the damages while displaying their true intent.  It is clear that MSFF wishes to validate and sanitize its prior conduct given the magnitude of damages incurred; however, the timeline of events and consistency of communication regarding exclusivity render this a relatively simple breach and tortious interference matter."

72.    Mr. Parks concluded his April 5, 2024 email by advising MSFF's counsel of MSFF's document retention requirements given the foreseeability of litigation.

73.    Less than one week later, on April 9, 2024, Mr. Parks further threatened litigation by asking MSFF's counsel whether they would "accept service on behalf of MSFF of waive service," further noting that Defendant "can follow the Hauge Service Convention, though we will seek reimbursement for our costs."

74.    On April 2, 2024, ESC received a similar demand letter from Defendant's counsel, this time accusing ESC of breaching the 2017 Agreement and tortiously interfering with the 2022 Agreement, and having caused financial damage to, Defendant while again demanding, as it had multiple times previously, that ESC cease all communications MSFF.  It was only upon receiving Defendant's April 2, 2024 demand letter that ESC first learned of the 2022 Agreement.

## FIRST CAUSE OF ACTION
## DECLARATORY RELIEF
### (Declaring the 2017 Agreement Terminated)

75.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if stated fully herein.

76.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

77.     An actual controversy has arisen between ESC and Defendant as to the rights, duties, responsibilities, and obligations of the parties under the 2017 Agreement in that ESC contends that it terminated the 2017 Agreement, and, upon information and belief, Defendant disputes and denies that:

(a)     ESC had a legal right to verbally terminate the 2017 Agreement;

(b)     ESC notified Defendant that it was exercising its right to terminate the 2017 Agreement; and

(c)     The 2017 Agreement was terminated.

78.     Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the ripe dispute and controversy by and between the parties.

79.     ESC seeks a declaratory judgment to determine whether the 2017 Agreement was terminated.

<u>**SECOND CAUSE OF ACTION**</u>
<u>**DECLARATORY RELIEF**</u>
**(Declaring the 2022 Agreement Terminated)**

80.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if stated fully herein.

81.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

82.     An actual controversy has arisen between MSFF and Defendant as to whether the termination effectuated via written notice by MSFF to Defendant on or about March 15, 2024 was valid and, if valid, the consequences of that notice.

83.     Paragraph 8 of the 2022 Agreement provides: "Unless earlier terminated as provided in this Agreement, the term of this Agreement shall commence as of April 1, 2022 and shall automatically expire at the end of 5 (Five) years, with option for renewal.  Either party may terminate this Agreement as follows: (a) Immediately upon [Ninety] days' prior notice with or without cause ...." Ex. B at p. 3, ¶ 8.

84.     Paragraph 9 of the 2022 Agreement provides: "Upon notice of termination of this Agreement for any reason, the following provisions shall apply: (a) [MSFF] shall have the right to immediately appoint another Distributor to serve existing customers and for business continuity, to continue sales efforts in the indicated Territory; (b) [MSFF] may continue to fill any orders from [Defendant] that have been accepted by [MSFF] prior to the termination of this Agreement under the terms and conditions of this Agreement; (c) All outstanding balances owed

by Distributor to Supplier shall become immediately due and payable to Supplier." *Id.* at p. 3, ¶ 9.

85.     MSFF provided written notice of termination of the 2022 Agreement on or about March 15, 2024 and, upon information and belief, Defendant believes: (a) MSFF does not have the right to terminate the 2022 Agreement; (b) the notice of termination was not valid and/or effective; and/or (c) Defendant is not bound by the obligations set forth in Paragraph 9 of the 2022 Agreement upon receipt of the notice of termination.

86.     MSFF seeks an order declaring the 2022 Agreement terminated effective June 13, 2024.

87.     MSFF further seeks an order declaring that, based on the aforementioned notice of termination, and in accordance with Paragraph 9 of the 2022 Agreement: (a) MSFF has the right to immediately appoint another distributor(s); and (b) all outstanding balances owed by Defendant to MSFF are immediately due and payable to MSFF.

88.     Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the ripe dispute and controversy by and between the parties.

### THIRD CAUSE OF ACTION
### DECLARATORY RELIEF
**(Declaring that ESC has a right to do business directly with MSFF and that MSFF has a right to do business directly with ESC and any other distributors)**

89.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if stated fully herein.

90.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought." 28 U.S.C. § 2201(a).

91.     An actual controversy has arisen between ESC and Defendant as to the rights, duties, responsibilities, and obligations of the parties in connection with ESC's right to do business with MSFF.  ESC contends that it has a legal right to do business directly with MSFF without interference from Defendant and, on information and belief, Defendant disputes and denies that:

(a)      ESC verbally notified Defendant that it was no longer willing to work with Defendant in connection with the joint sales agreement; and

(b)     Defendant was not the exclusive distributor of MSFF Products in the United States; and

(c)     ESC had a legal right to do business directly with MSFF.

92.     An actual controversy has arisen between MSFF and Defendant as to the rights, duties, responsibilities, and obligations of the parties in connection with MSFF's right to do business with ESC and other distributors.  MSFF contends that it has a legal right to do business directly with ESC and other distributors without interference from Defendant and, on information and belief, Defendant disputes and denies that:

(a)     Defendant was not the exclusive distributor of MSFF Products in the United States; and

(b)     MSFF has a legal right to sell MSFF directly to distributors other than Defendant.

93.     A dispute has arisen as to whether the 2022 Agreement provides Defendant the exclusive right to distribute MSFF Products in the United States.

94.     Resolution of the duties, responsibilities and obligation of the parties is

necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the ripe dispute and controversy by and between the parties.

**FOURTH CAUSE OF ACTION**
**DECLARATORY RELIEF**
**(Declaring that ESC did not tortiously interfere with any of Defendant's rights under the 2022 Agreement)**

95.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if stated fully herein.

96.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

97.     An actual controversy has arisen between ESC and Defendant.  ESC contends that it had a legal right to do business directly with MSFF under the 2022 Agreement without liability to Defendant and, on information and belief, Defendant alleges ESC has tortiously interfered with those rights by purchasing MSFF Products directly from MSFF.

98.     ESC seeks a declaratory judgement to determine the following:

(a)     The 2022 Agreement designated ESC as the Master Importer of MSFF Products in the United States;

(b)     The 2022 Agreement permitted ESC to supply MSFF Products to MSFF's customers;

(c)     The 2022 Agreement did not appoint Defendant as MSFF's exclusive distributor throughout the United States; and

(d)     ESC did not violate any of Defendant's rights under the 2022 Agreement by making purchases of MSFF Products directly from MSFF.

99.     Resolution of the rights of ESC to do business directly with MSFF, and that engaging in such business does not constitute tortious interference with any rights of Defendant, is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the ripe dispute and controversy by and between the parties.

**FIFTH CAUSE OF ACTION**
**DECLARATORY RELIEF**
**(Declaring that MSFF did not tortiously interfere with any of Defendant's rights under ESC's agreement with Defendant)**

100.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if stated fully herein.

101.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

102.    An actual controversy has arisen between MSFF and Defendant.  MSFF contends that it had a legal right to do business directly with ESC and other distributors under the 2022 Agreement without liability to Defendant and, on information and belief, Defendant contends that, by communicating with and selling MSFF Products to ESC and other distributors, MSFF has tortiously interfered with Defendant's contractual relationship with ESC.

103.    MSFF seeks a declaratory judgement to determine the following:

(a)     The 2017 Agreement was terminated on or about May 4, 2018 and, therefore, there can be no tortious interference with any agreement between Defendant and ESC;

(b)     The 2022 Agreement was not exclusive to Defendant, and permitted MSFF to sell MSFF Products directly to ESC and other distributors;

(c)     MSFF did not violate any of Defendant's rights or tortiously interfere with any

contractual relationship between Defendant and ESC by virtue of its sale of MSFF Products directly to ESC or other distributors.

104.     Resolution of the rights of MSFF to do business with ESC and other distributors, and that engaging in such business does not constitute tortious interference with any rights of Defendant, is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the ripe dispute and controversy by and between the parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court order the following relief:

(A)     Declaring and adjudging the 2017 Agreement is terminated and of no legal force and effect;

(B)     Declaring and adjudging MSFF provided timely and proper notice of termination of the 2022 Agreement on or about March 15, 2024;

(C)     Declaring and adjudging the 2022 Agreement is terminated effective June 13, 2024;

(D)     Declaring and adjudging that, pursuant to Paragraph 9 of the 2022 Agreement: (i) MSFF has the right to immediately appoint another distributor(s); and (ii) all outstanding balances owed by Defendant to MSFF are immediately due and payable to MSFF;

(E)     Declaring and adjudging ESC has the right to do business with MSFF without interference from Defendant;

(F)     Declaring and adjudging MSFF has the right to do business with ESC and other distributors without interference from Defendant;

(G)      Declaring and adjudging ESC has not interfered with any rights of Defendant;

(H)      Declaring and adjudging MSFF has not interfered with any rights of Defendant;

and

(I)    Such other relief as the Court may deem just proper and equitable under the

circumstances.

Dated: April 10, 2024

Respectfully submitted,

/s/ Damian L. Albergo

Damian L. Albergo, Esq.
Albergo, Shmaruk & Kofman, LLC
15 Warren Street, Suite 20
Hackensack, New Jersey 07601
(201) 354-4999
Attorney for Plaintiff Eve Sales Corp.

/s/ David S. Gold

David S. Gold Esq.
Cole Schotz, P.C.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
Attorneys for Plaintiff Marie Sharp's
Fine Foods Ltd.