

**COLE SCHOTZ** P.C.

Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800
201-489-3000   201-489-1536  fax

—
New York
—
Delaware
—
Maryland
—
Texas
—
Florida

David S. Gold
Member
Admitted in NJ and NY

Reply to New Jersey Office
Writer's Direct Line: 201.525.6305
Writer's Direct Fax: 201.678.6305
Writer's E-Mail: DGold@coleschotz.com

June 13, 2024

**Via Electronic Case Filing**

Hon. P. Kevin Castel, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Plaintiffs are granted leave to amend provided they file an amended complaint by July 24.  The motion to dismiss (ECF 19) is deemed withdrawn in light of the pre-motion letter (ECF 20).  The pre-motion letter is denied without prejudice  to renewal in a letter addressed to the further amended pleading provided the letter is filed by August 7. Conference adjourned from July 22 to September 9, 2024 at 11 a..m. The conference will proceed telephonically.
> Dial-In No.:  1-888-363-4749, Access Code:  3667981.
> SO ORDERED.
>
> P. Kevin Castel
> United States District Judge
>
> 7/11/2024

**Re:** *Eve Sales Corp., et al. v. Marie Sharp's USA, LLC*
**Case No. 1:24-cv-02757-PKC**

Dear Judge Castel:

We represent Plaintiff Marie Sharp's Fine Foods, Ltd. ("MSFF") in the above action.  In accordance with Paragraph 3 of Your Honor's Individual Practices in Civil Cases (the "Individual Practices"), below please find MSFF's response to the Pre-Motion Letter filed by Defendant, Marie Sharp's USA, LLC ("Defendant"), seeking leave to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) [Doc. 20] (the "Pre-Motion Letter").  For the reasons set forth below, Defendant's request for leave should be denied.[1]  We have conferred with Albergo, Shmaruk & Kofman, LLC, counsel for Co-Plaintiff, Eve Sales Corp. ("ESC"; together with MSFF, "Plaintiffs"), who joins in this letter for the sake of brevity and to avoid duplication.

**Defendant's Procedurally Improper Motion to Dismiss**

As a threshold matter, Defendant's Motion to Dismiss [Doc. 19] (the "Motion") should be stricken as procedurally improper.  Paragraph 3(A)(i) of the Individual Practices requires a Pre-Motion Letter prior to the filing of a motion to dismiss.  The stated purpose of this rule is, among other things, "to enable[] the Court to set an appropriate briefing schedule and to explore whether the motion may be (a) obviated by an amendment to the pleadings or consent to the relief …." (Individual Practices, ¶3(A)(v.).)  Defendant violated Paragraph 3(A)(i) by failing to file a Pre-Motion Letter prior to filing the Motion.  As a courtesy, undersigned counsel immediately advised Defendant's counsel of the applicable rule and directed counsel to withdraw the Motion.

---

[1] Pursuant to Paragraphs 1(A)(iii) and 3(A)(vi) of the Individual Practices, the next conference before the Court is the Initial Conference scheduled for July 22, 2024.


COLE SCHOTZ P.C.

Hon. P. Kevin Castel, U.S.D.J.                                          Page 2
June 13, 2024

Defendant then filed a Pre-Motion Letter but failed to withdraw the Motion, choosing instead to include in the Pre-Motion Letter its own briefing schedule.  (*See* Premotion Letter at p. 2.)  MSFF respectfully requests that the Motion be stricken and, absent further instruction from the Court, will not be addressing the various arguments contained in the Motion in this response.  Instead, MSFF's response will be focused on the limited arguments set forth in the Pre-Motion Letter.

## The Amount In Controversy Exceeds $75,000

Federal courts have diversity jurisdiction where the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a)(1).  Defendant does not dispute the complete diversity of the parties; rather, it claims Plaintiffs fail to adequately plead that the amount in controversy exceeds $75,000.  Defendant provides no substantive support for this conclusory statement.

The party invoking federal jurisdiction carries the burden of demonstrating to a "reasonable probability" that the amount-in-controversy requirement is satisfied.  *See United Food & Comm'l Workers Union v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 304-05 (2d Cir. 1994) (citations omitted).  In declaratory judgment actions "involving the validity of a contract … the entire value of the contract determine[s] the amount in controversy." *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975) (citations omitted).  The Court may consider extrinsic evidence outside the pleadings in determining whether subject matter jurisdiction exists.  *See Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

Plaintiffs seek declaratory relief with respect to two agreements: (i) the October 26, 2017 Authorized Distribution Agreement between ESC and Thoughtleader.com LLC, the predecessor-in-interest to Defendant (the "2017 Agreement"); and (ii) the April 1, 2022 Distribution Agreement between MSFF and Defendant (the "2022 Agreement"; together with the 2017 Agreement, the "MSUSA Agreements").  The MSUSA Agreements are attached to the First Amended Complaint [Docs. 16-1 and 16-2] and incorporated therein by reference.  Plaintiffs seek a declaration that: (i) the rights afforded Defendant in the MSUSA Agreements are not exclusive; (ii) Plaintiffs provided timely and proper notice of termination of the MSUSA Agreements, and the consequences of same, including a declaration of MSFF's rights and Defendant's obligations upon termination; and (iii) Plaintiffs have not unlawfully interfered with Defendant's contractual rights under the MSUSA Agreements, and will not violate any such rights in the future by, among other things, continuing to sell directly to ESC and/or entering into non-exclusive distribution arrangements with third party distributors.

Despite Defendant's conclusory statement to the contrary, the value of the MSUSA Agreements, considered individually or together, well exceeds the amount-in-controversy threshold.  For example, the 2022 Agreement requires Defendant to purchase and sell a minimum of 24 containers of product per year for five years.  The average cost of a single container of MSFF products alone exceeds $75,000.  (*See* Declaration of Jody A. Williams dated June 12, 2024 ("Williams Dec."), a true copy of which is attached hereto as Exhibit A, at ¶4.)  From the effective date of the 2022 Agreement to the present, MSUSA purchased 41 containers from MSUSA for a



total purchase price of $3,125,125.38.  (*Id.*)  As for the 2017 Agreement, direct sales from MSFF to ESC (*i.e.*, the sales Defendant claims violated the exclusivity contained in the 2022 Agreement) from June 2023 to the date of the Complaint were over $953,372, with additional direct sales following the filing of this action.  (*See* Williams Dec., at ¶6; Declaration of Stuart Gale, dated June 13, 2024 ("Gale Dec."), a true copy of which is attached hereto as Exhibit B, at ¶8.)  Applying the 20%-25% markup applied to MSFF products purchased by ESC from Defendant under the 2017 Agreement (*see* Gale Cert. at ¶¶ 4, 8), Defendant would be entitled to no less than $190,600, not including current and future orders ESC has placed and intends to place directly with MSFF.

As further discussed in the Complaint, on March 21, 2024 and April 5, 2024, Defendant's counsel wrote to MSFF's counsel claiming distribution exclusivity under the 2022 Agreement, an alleged breach of that exclusivity (among other claims), and threatened suit if MSFF did not agree with Defendant's interpretation of the 2022 Agreement *and* provide Defendant with a new exclusive distribution agreement.  (*See* Emails, true copies of which are attached hereto as Exhibit C, pp. 1-5.)  As stated by Defendant's counsel: "Surely the loss of sales volume and damages incurred in destroying [Defendant's] business is going to make the cost of litigation appear quite insignificant."  (*Id.* at p. 2.)  It therefore appears that, until this case was filed, Defendant agreed that the value of the MSUSA Agreements and this litigation exceeds $75,000.  Regardless of Defendant's selective and inconsistent view of the value of the MSUSA Agreements and this action, the value of these lucrative distribution agreements cannot be legitimately disputed and Defendant's request for leave on this basis should be denied.

## Plaintiffs' Request For Declaratory Judgment Is Appropriate

The balance of the Pre-Motion Letter is focused on the propriety of Plaintiffs' request for declaratory judgment, which Defendant confusingly describes as "a bad faith and misguided attempt at gamesmanship."  (Pre-Motion Letter at p. 1.)  Defendant further misconstrues the relief sought as "an adjudication of past acts related mostly to breach of contract claims."  (*Id.* at p. 2.)  As with its first argument, Defendant provides no support for its conclusory statements because they are unfounded.  In accordance with the purpose of the Declaratory Judgment Act, Plaintiffs are seeking a declaration of the parties' rights and obligations under the MSUSA Agreements to resolve an actual, ongoing controversy regarding the parties' competing interpretations of those agreements, and how the language of those agreements will impact the future relations between the parties and Plaintiffs' future relations with third parties.

While "a district court's determination whether to exercise declaratory jurisdiction is denominated as discretionary, … a district court is required to entertain a declaratory judgment action '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  *Reed v. Luxury Vacation Home LLC*, 632 F. Supp. 3d 489, 511 (S.D.N.Y. 2022) (citations omitted).  As particularly applicable here, "a declaratory judgment is a proper method is a proper method for settling justiciable disputes as to contract rights and obligations."  *GemShares, LLC v. Kinney*, No. 17-844, 2017 WL 1092051, at *2 (S.D.N.Y. Mar. 15, 2017) (quoting *Royal Palm Senior Inv'rs, LLC v. Carbon Capital II, Inc.*, No. 08-4319,



Hon. P. Kevin Castel, U.S.D.J.                                                    Page 4
June 13, 2024

2009 WL 1941862, at *8 (S.D.N.Y. July 7, 2009)). Here, declaratory jurisdiction is proper for both reasons. As alleged in the Complaint, Defendant's counsel sent multiple correspondence claiming, among other things, exclusivity pursuant to the 2022 Agreement, a breach of both MSUSA Agreements, and a demand for exclusivity on a going forward basis based on the 2022 Agreement. On April 9, 2024, the colloquy escalated to the point where Defendant's counsel asked whether MSFF's counsel would accept service of Defendant's Complaint. (*See* Ex. C at p. 1.)

Contrary to Defendant's statement, Defendant has not "affirmed" any issues, nor have the controversies that are the subject of this action been "manufactured for the sole purpose of establishing subject matter jurisdiction." (Pre-Motion Letter at p. 1.) To the extent Defendant agrees with Plaintiffs' interpretation of the MSUSA Agreements and further agrees that the subject agreements have been timely and properly terminated (both of which would be contrary to Defendant's position to date), an Order may be entered resolving this matter. Any such Order would have to recognize the various obligations of Defendant upon termination, including the ability of MSFF to freely contract with other distribution partners, such as ESC, and the immediate payment of all outstanding balances owed by Defendant to MSFF. Until then, Defendant's relentless threats of litigation based *both* on purported past breaches of the subject agreements *and* the future legal relationship of the parties is precisely the type of dispute where it is not only useful, but necessary for the Court to clarify the legal relations at issue and afford the parties relief from the uncertainty, insecurity, and controversy giving rise to this proceeding. *See Reed*, 632 F. Supp. 3d at 511. Indeed, to date, MSFF has been hamstrung in its ability to contract with new distribution partners based on Defendant's threats of litigation based on exclusivity. MSFF will continue to be damaged and prejudiced until the parties' rights and obligations are adjudicated.

To be clear, in addition to meritless threats of litigation, on or about March 6, 2024, Defendant sent a cease-and-desist letter to MSFF demanding that MSFF cease all direct sales to customers in the United States based on Defendant's alleged exclusivity. Specifically, Defendant wrote: "Please consider this letter our formal request that [MSFF] immediately discontinue any and all direct sales to customers within the United States, including but not limited to, [ESC]. Our damages due to this violation of our agreement are quite substantial and continue to accrue." (*See* Williams Dec., Ex. A, at p. 1.) Likewise, on April 2, 2024, Defendant sent a cease-and-desist letter to ESC at its New York office demanding that ESC cease all direct purchases from MSFF. (*See* Gale Dec., at ¶5; Ex. A.) These are not demands concerning past acts, but demands with respect to MSFF's existing and future right to sell and distribute its products to other distributors, including ESC. As recognized by this Court, "[c]ease-and-desist letters … commonly feature in sufficiently immediate and concrete disputes under the Declaratory Judgment Act, no doubt because they indicate a not insubstantial threat of future litigation." *Pfizer Inc. v. McNeil-PPC, Inc.*, No. 14-4659, 2015 WL 13227648, at *2 (S.D.N.Y. Dec. 11, 2015) (citations omitted); *see also Gelmart Indus., Inc. v. Eveready Battery Co., Inc.*, 120 F.Supp.3d 327, 331-32 (S.D.N.Y. 2014) (finding cease and desist letter sufficient to establish a case of actual controversy under the Declaratory Judgment Act). Here, the threat of litigation was not only indicated by the aforementioned cease-and-desist letters – it was confirmed the following month when Defendant's counsel expressly and repeatedly threatened suit if MSFF did not comply with Defendant's demand for exclusivity.

 COLE SCHOTZ P.C.

Hon. P. Kevin Castel, U.S.D.J.                                                      Page 5
June 13, 2024

Defendant relies on select language from factually and procedurally inapposite cases where the Court, in its discretion: (i) transferred/dismissed the actions because one of the parties "already invoked its right to a coercive remedy[,]" (*S.E.C. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376, 388 (S.D.N.Y. 2010) (citations omitted); *see also Unique Indus. v. Lisa Frank, Inc.*, No. 93-8037, 1994 WL 525041, at *1 (S.D.N.Y. Sept. 23, 1994); *Nat. Union Fire Ins. Co. of Pittsburgh, PA v. Int'l Wire Group, Inc.*, No. 02-10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003)); (ii) dismissed the action where the underlying question was rendered moot, (*see Scheiner v. ACT Inc.*, No. 10-cv-0096, 2013 WL 685445, at *3 (E.D.N.Y. Feb. 24, 2013)); and (iii) dismissed the actions as nothing more than a veiled attempt at an untimely appeal of a prior judicial decision. *See Kelsey v. Clark*, No. 21-cv-985, 2021 WL 6617470, at *2-3 (N.D.N.Y. Oct. 21, 2021); *U.S. v. Doherty*, 786 F.2d 491, 499-500 (2d Cir. 1986)).

Whether a coercive remedy may be sought by Defendant or not, and contrary to Defendant's conclusory statements, Plaintiffs are *not* presently seeking a coercive remedy, are *not* presently seeking relief for past conduct, and are *not* required to wait for Defendant to file a Complaint in the jurisdiction of its choice before taking action with respect to its own rights. Moreover, to the extent Defendant is alleging forum shopping, ESC is a New York company with whom Defendant conducted substantial business over several years. Defendant has purposefully availed itself of the privilege of doing business with ESC and others in New York and should not be heard to complain about being hauled into court here. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (citations and quotations omitted).

## Request for Leave to Amend

Pursuant to Paragraph 3(A)(iv) of the Individual Practices, MSFF respectfully requests leave to amend should the Court find it necessary to incorporate the above information and/or additional information concerning the propriety of the Court's subject matter jurisdiction. Furthermore, there are payment obligations of Defendant to MSFF under the 2022 Agreement that may ripen into a new breach of contract claim while this action proceeds. For example, MSFF is seeking a declaration that the 2022 Agreement was terminated, which would trigger various termination rights, including MSFF's right to immediate payment of all outstanding balances owed by Defendant to MSFF, which is currently $286,238.65. (*See* Williams Dec., at ¶5.) If and when that occurs, this Court would be the most appropriate forum to adjudicate the claim and MSFF reserves the right to seek leave to amend at that time.

Respectfully submitted,

*/s/ David S. Gold*

David S. Gold

CC: All Counsel of Record (via ECF)

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVE SALES CORP. and MARIE SHARP'S FINE FOODS, LTD., | ) )  Case No.: 1:24-cv-02757 (PKC) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| MARIE SHARP'S, USA, LLC, | ) ) ) |
| Defendant. | ) ) ) |

## DECLARATION OF JODY A. WILLIAMS

I, JODY A. WILLIAMS, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am the Chief Marketing and Sales Director of Plaintiff, Marie Sharp's Fine Foods, Ltd. ("MSFF").   I am fully familiar with the facts stated below and submit this Declaration in opposition to Defendant Marie Sharp's USA, LLC's ("MSUSA") request for leave to file a motion to dismiss the Amended Complaint (the "Complaint") for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

2.     As set forth in the Complaint, MSFF is a Belize-based, family-owned company engaged in the manufacture of sauces, jams, and jellies ("MSFF Products").     From approximately 2019 through the present, MSUSA served as a distributor of MSFF Products in the United States.   In or about December 2022, MSFF and MSUSA entered into a Distribution Agreement that was retroactively dated April 1, 2022 (the "2022 Agreement").   A true and accurate copy of the 2022 Agreement is attached to the Complaint [Doc 16] as **Exhibit B**.

3.     A controversy has arisen between MSFF and MSUSA as to the parties' rights and obligations under the 2022 Agreement including, without limitation, whether the 2022



Agreement provides MSUSA exclusive distribution rights in the United States, whether MSFF properly terminated the 2022 Agreement, and the consequences of that termination, and whether MSUSA has the right to distribution exclusivity going forward.

4. The value of the 2022 Agreement easily exceeds $75,000. For example, Paragraph 1 of the 2022 Agreement required MSUSA to purchase and sell a minimum of 24 containers of MSFF Products each year for five years. From April 1, 2022 through December 31, 2022, MSUSA purchased 17 containers of MSFF Products for a total purchase price of $1,255,975.95. In 2023, MSUSA purchased 16 containers of MSFF Products for a total purchase price of $1,097,717.73. From 2024 to the present, MSUSA purchased 8 containers of MSFF Products for a total purchase price of $771,431.70.

5. Upon termination of the 2022 Agreement, the validity of which is a component of the declaratory relief sought in this action, "[a]ll outstanding balances owed by [MSUSA] to [MSFF] shall become immediately due and payable to [MSFF]." MSUSA currently owes MSFF $286,238.65, the purchase price of the last three orders placed by MSUSA in 2024.

6. Finally, MSUSA claims that the 2022 provided MSUSA with exclusivity in the United States and has alleged a breach of contract arising from MSFF's direct sales of MSFF Products to Plaintiff Eve Sales Corp. ("Eve Sales") and others. Prior to the filing of this action, MSFF made 13 shipments of MSFF Products directly to Eve Sales for a purchase price of $953,372. Since the filing of this action, Eve Sales has placed two additional orders for a purchase price of approximately $150,000.

7. Attached hereto as **Exhibit A** is a true and accurate copy of a demand letter from MSUSA to MSFF, dated March 6, 2024.



I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Jody A. Williams

Dated: June 12, 2024
      Stann Creek, Belize

66748/0002-47921642



# EXHIBIT A

March 6, 2024

Marie Sharp's Fine Foods, Ltd.
Jody Williams
1 Melinda Road
Stann Creek Valley
Belize

RE:    Marie Sharp's USA, LLC

Dear Jody,

Over the past year, we have attempted to express the concerns we have about direct sales between Marie Sharp's Fine Foods, Ltd. and Eve Sales Corp. of Bronx, NY. We hope that this letter will help you understand their significance.

As you are aware, our Distribution Agreement, stipulates that as "Supplier (Marie Sharp's Fine Foods, Ltd.) appoints (Marie Sharp's USA, LLC), as the official USA Representative…within the country of the United States of America (the "Territory")." Further, Supplier is obligated to refer to Marie Sharp's USA, LLC, all sales inquiries received from the Territory assigned.

It is our understanding that Eve Sales, a customer of Marie Sharp's USA, LLC, has been purchasing products directly from Marie Sharp's Fine Foods, Ltd. for roughly a year. This is a clear violation of both the spirit and specific Agreement between our two companies, as well as our separate agreement with Eve Sales. We have previously expressed our concerns about this via email and telephone in the hope that Marie Sharp's Fine Foods and Eve Sales would discontinue this practice. Unfortunately, it continues.

Please consider this letter our formal request that Marie Sharp's Fine Foods, Ltd. immediately discontinue any and all direct sales to customers within the United States, including but not limited to, Eve Sales. Our damages due to this violation of our agreement are quite substantial and continue to accrue. Whereas, Marie Sharp's Fine Foods, Ltd. has many customers throughout the world and Eve Sales has many customers in many markets, as well as many other brands that supply them and the independence to pursue additional suppliers, customers and markets, we have only one supplier – Marie Sharp's Fine Foods, Ltd. – and only one market in which to sell – the United States.

Our exclusive agreement with a single supplier and market has greatly benefited Marie Sharp's Fine Foods, Ltd., enabling us to establish a successful new distribution model in the United States. Previously, selling to various independent customers led to inconsistent pricing, lack of

brand representation, and minimal market penetration. This lack of stewardship negatively impacted the brand.

Japan, having surpassed the United States as your primary market, exemplified the effectiveness of our model. Our primary goal was to be the official affiliate for the U.S. market, ensuring consistent promotion of the Marie Sharp's brand nationwide. This approach aimed to enhance consumer recognition, boost sales volume, and secure widespread shelf space and distribution across the country over time.

With the expense of a large amount of time and capital, the U.S. market is now the largest, and we believe we have accomplished these goals and that both of our companies have benefited from this relationship.

We aim to sustain the growth of the Marie Sharp's brand in the US for the long term. However, engaging in direct sales contrary to our Agreement undermines our ability to invest in and promote the brand consistently. This jeopardizes brand representation, sales volume, pricing consistency for wholesale and retail customers, and ultimately our company's viability. We sincerely hope you recognize the threat this poses to our relationship, our company, and our livelihoods. We urge you to cease all direct sales to US customers so that we can channel our resources and efforts into mutually beneficial brand growth.

We are available to discuss this further at your leisure.

Sincerely,

Sonia Touby, CEO
Marie Sharp's USA, LLC

Michael Touby, President
Marie Sharp's USA, LLC

# EXHIBIT B

Damian L. Albergo, Esq.
Albergo, Shmaruk & Kofman, LLC
15 Warren Street, Suite 20
Hackensack, New Jersey 07601
(201) 354-4999
*Attorneys for Plaintiff, Eve Sales Corp.*

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| EVE SALES CORP. and MARIE SHARP'S FINE FOODS, LTD., <br><br> *Plaintiffs,* <br><br> v. <br><br> MARIE SHARP'S, USA, LLC, <br><br> *Defendant.* | Case No.: 1:24-cv-02757 (PKC) <br><br><br> DECLARATION OF STUART GALE |

STUART GALE, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury that the foregoing is true and correct:

1.     I am the President of plaintiff, Eve Sales Corp. ("Eve Sales").  As such, I have personal knowledge of the facts set forth in this Declaration, which is submitted in opposition to the defendant's pre-motion letter seeking permission to file a motion to dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

2.     Eve Sales is a New York corporation that imports and distributes of food products from its principal place of business located in Bronx, New York.



3.      From November 2017 to Spring 2018, and then again from June 2019 to June 2023, Eve Sales had a business relationship with the defendant, which was previously a distributor of food products manufactured by our co-plaintiff, Marie Sharp's Fine Foods, Ltd. ("MSFF").  For a variety of reasons, many of which are set forth in the Amended Complaint, Eve Sales ceased doing business with the defendant and began purchasing MSFF's products directly from MSFF.

4.      In the past, the defendant generally received a 20% to 25% markup on MSFF products ordered by Eve Sales from defendant.  However, since Eve Sales began to order MSFF's products directly, MSFF has offered Eve Sales preferential pricing.

5.      On April 2, 2024, I received a cease-and-desist letter from Nicholas Parks, Esq., counsel for the defendant.  In his cease-and-desist letter, Mr. Parks claimed that the defendant was the exclusive distributor of MSFF's products in the United States and that Eve Sales was prohibited from dealing directly with MSFF.  Mr. Parks also alleged that Eve Sales committed a breach of contract, tortiously interfered with his client's rights, and caused "substantial financial damage to [the defendant]."  (A true copy of Mr. Parks' April 2, 2024 cease-and-desist letter is annexed hereto as Exhibit A.)

6.      Mr. Parks' letter concluded by stating the following: "[a]t your earliest convenience, please confirm in writing that you have ceased any and all direct purchases from MSFF.  This letter shall in no way limit the rights of MSUSA at law or equity." *Id.*

7.      Eve Sales along with MSFF filed this action to determine, among other things, whether the defendant has the exclusive right to sell MSFF's products in the USA and whether Eve Sales may purchase MSFF's products directly from MSFF.

8.      The amount in controversy between Eve Sales and the defendant exceeds $75,000. Since ceasing to do business with the defendant, Eve Sales purchased $953,372 worth of products

directly from MSFF up to the date of the Complaint.  Based on our calculations, the defendant would have earned at least $190,674 at its usual 20% markup.  Eve Sales has continued to purchase products directly through MSFF after the filing of the Complaint, so the amount in controversy will only increase.

PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Stuart Gale

Dated:  June 13, 2024
        Bronx, NY

3

**EXHIBIT "A"**

<u>**SENT VIA EMAIL AND USPS PRIORITY MAIL TRACKING NUMBER 9405536105536711397655**</u>

April 2, 2024

Eve Sales Corp.
Stuart Gale, President
945 Close Avenue
Bronx, NY 10473

RE:    Authorized Distribution Agreement dated October 26, 2017

Dear. Mr. Gale,

     I represent Marie Sharp's USA, LLC ("MSUSA"), successor corporation to Thoughtleader.com, LLC, in reference to the above-mentioned agreement.

     As you are aware, and as Section 1 of the Agreement (enclosed) states, your company agreed to purchase products produced by Marie Sharp's Fine Foods ("MSFF") solely from my client, MSUSA. This agreement was specifically and consistently followed by your company and MSUSA from the time of execution until early last year, 2023. At that point, in breach of the Agreement, your company began purchasing products produced by MSFF directly from MSFF.

     Further, as you are aware, MSUSA has an exclusive import and distribution agreement for MSFF products within the United States. By importing directly from MSFF, your company has tortiously interfered with that agreement.

     Your breach and tortious interference have caused substantial financial damage to MSUSA. This letter shall serve as a request for you to immediately cease and desist from any and all direct purchases from MSFF, in contravention of the above-referenced agreement. Please retain any and all documents, emails, text messages, recordings, or other documents or communications which pertain to these matters, including but not limited to, any and all communications between representatives of your company and MSFF.

     At your earliest convenience, please confirm in writing that you have ceased any and all direct purchases from MSFF. This letter shall in no way limit the rights of MSUSA at law or equity.

                                Sincerely,

                                Nicholas Parks, Esq.
                                PO Box 36458
                                Birmingham, AL 35236
                                214-991-2642
                                nhparks@gmail.com
                                Alabama Bar No.: 7306M46B
                                Texas Bar No.: 24058032

# EXHIBIT C

**Gold, David**

| | |
|---|---|
| **From:** | Nicholas Parks <nhparks@gmail.com> |
| **Sent:** | Tuesday, April 9, 2024 9:55 AM |
| **To:** | Pellegrino, Robyn |
| **Subject:** | RE: MSUSA Follow-up [IMAN-CSDOCS.FID2539416] |

**CAUTION:** External Message

Dear Ms. Pellegrino,

Would you mind answering whether your firm will either accept service on behalf of MSFF or waive service? Alternatively, we can follow the Hague Service Convention, though we will seek reimbursement for our costs.

Thanks,

Nicholas Parks, Esq.
Alabama Bar No: 7306M46B
Texas Bar No: 24058032
Phone: 214-991-2642
Fax: 214-441-6425

NOTICE: This email may contain information that is privileged or otherwise confidential. It is intended solely for the holder of the email address to which it has been directed. It should not be disseminated, distributed, copied or forwarded to any other persons. It is not intended for transmission to, or receipt by, any other person. If you have received this email in error, please notify us of the error by reply email or calling (214) 991-2642, and please delete this email without copying or forwarding.

On 4/5/2024 3:16:25 PM, Nicholas Parks <nhparks@gmail.com> wrote:

Dear Ms. Pellegrino,

I appreciate your response yesterday. I also appreciate the offer by MSFF of exclusivity regarding my client's relationship with Wal-Mart. However, MSUSA is already the exclusive provider of MSFF's products to Wal-Mart, as they are for the vast majority of other wholesale customers to whom they provide MSFF's products - as they were with Eve Sales prior to MSFF's tortious interference. We are unsure what MSFF has offered other than an additional requirement regarding sales volume, combined with the legitimization of a future instance of tortious interference. For those reasons, we must reject this offer.

My client truly does value their relationship with MSFF - it's the only product line they've sold for five years or more. Of course, MSFF has long been aware of this. It is the strong preference of MSUSA to resolve this matter; however, as previously stated, MSUSA's business model is predicated and dependent upon being the exclusive distributor in the United States. This was the clear intent of both MSFF and MSUSA in the agreements from 2019 and 2022. It's the basis for the name of MSUSA. It was the desire of Mr. and Mrs. Sharp, as expressed in Mrs. Sharp's recent biography. It was the desire of Mr. Williams, as also expressed in Mrs. Sharp's recent biography, as well as in a variety of Mr. Williams' communications with Mr. and Mrs. Touby over the years. It was the business practice of the parties until early last year. MSFF has benefited greatly from this exclusive relationship, as is evident from the huge growth in sales volume since 2019.

Despite this, MSFF decided early last year to breach that agreement and tortiously interfere with MSUSA's contractual relationship with Eve Sales.  As you are bound to soon discover, Mr. Williams lied about his breach and tortious interference multiple times last year in written communication with Mr. Touby.  Presumably, this was to induce MSUSA's continued commitment to the agreement while MSFF continued their breach. Several months after MSFF's initial breach and tortious interference, Mr. Williams, according to his written communications, was defending the exclusive agreement with MSUSA to other employees of MSFF - perhaps to Mrs. Sharp. However, he knew they'd long been in breach of that agreement; despite this, neither he or anyone else within MSFF thought to terminate the agreement with MSUSA. Only after Mr. and Mrs. Touby sent a letter demanding that MSFF cease their breach did MSFF decide to terminate the existing agreement. But termination of the agreement

1

doesn't resolve the breach or tortious interference. If anything, they've only solidified and magnified the damages while displaying their true intent. It is clear that MSFF wishes to validate and sanitize its prior conduct given the magnitude of damages incurred; however, the timeline of events and consistency of communication regarding exclusivity render this a relatively simple breach and tortious interference matter.

You have expressed MSFF's desire to avoid costly and time-consuming litigation. If true, it is hard for me to understand how MSFF has rationalized dismantling US distribution of their product and interference with MSUSA's customer accounts. Surely the loss of sales volume and damages incurred in destroying MSUSA's business is going to make the cost of litigation appear quite insignificant.

MSUSA remains willing to discuss an exclusive distribution agreement, including some protections from future conduct that might mirror the aforementioned actions by MSFF.

Thank you for your instructions regarding document retention. Please also inform your clients of the communication and document retention requirements.

Thanks,

Nicholas Parks, Esq.
Alabama Bar No: 7306M46B
Texas Bar No: 24058032
Phone: 214-991-2642
Fax: 214-441-6425

NOTICE: This email may contain information that is privileged or otherwise confidential. It is intended solely for the holder of the email address to which it has been directed. It should not be disseminated, distributed, copied or forwarded to any other persons. It is not intended for transmission to, or receipt by, any other person. If you have received this email in error, please notify us of the error by reply email or calling (214) 991-2642, and please delete this email without copying or forwarding.

On 4/4/2024 3:00:55 PM, Pellegrino, Robyn <rpellegrino@coleschotz.com> wrote:

Mr. Parks,

We have discussed your March 21, 2024 correspondence with our client, Marie Sharp's Fine Food Ltd. ("Marie Sharp's").

As you are aware, our clients are party to a non-exclusive Distribution Agreement, dated April 1, 2022, that is terminable without cause by either party upon ninety days' notice. Nowhere in that binding agreement does it state that Marie Sharp's USA, LLC ("MS USA") is the exclusive United States distributor for Marie Sharp's and it is our client's position that MS USA is not now and was never the exclusive distributor of Marie Sharp's products in the United States.  Accordingly, your allegations of breach of contract and insinuations of bad faith by Marie Sharp's in exercising its clear termination rights are unfounded.

While Marie Sharp's disagrees with your client's position, our client values its relationship with MS USA and remains interested in maintaining its non-exclusive distributor relationship with MS USA pursuant to the terms of the Distributorship Agreement that was provided.  To that end and in an effort to avoid costly and time-consuming litigation, Marie Sharp's is willing to name MS USA as its exclusive distributor to Walmart and Walmart.com (together, "Walmart") in the United States, provided that MS USA meets certain annual sales targets to Walmart to be designated in the Distributorship Agreement.  The annual sales target for Walmart for the first year of the new term is 18 containers and the annual sales target for Walmart for the second year of the term is 20 containers.  Should MS USA fail to achieve the applicable sales target for any year during the agreed-upon term of the Distributorship Agreement, Marie Sharp's would have

the right to revoke MS USA's exclusivity with respect to Walmart.   MS USA would remain the non-exclusive distributor for all other distribution channels in the United States.

Our client hopes to continue its relationship with MS USA upon the foregoing terms, subject to the terms of the Distributorship Agreement previously provided.  If your client is willing to move forward on this basis, we will prepare an updated draft of the Distributorship Agreement for your review.

 Unfortunately, in light of your client's threat of litigation, we are also obligated to provide notice to MS USA of its document retention and preservation obligations.  Notice is hereby provided that MS USA, and any affiliated company or persons, shall refrain from taking any action to destroy, discard, tamper with, or delete any documentation (electronic or paper) concerning the issues that would arise in any potential litigation in this matter and must take all steps necessary to ensure the preservation of all documents which may be relevant to any litigation stemming the conduct discussed herein, including all electronically formatted or stored documents and data in MS USA's possession, custody, or control, or the possession, custody, or control of GPS's employees and representatives, and any related entities.  In this regard, any document retention or destruction policy and all computer backup protocols should be adjusted to ensure the preservation of all such documents.  Failure to do so will expose MS USA and any others involved, to additional legal liability.

This correspondence is sent without prejudice to our client's rights and remedies, all of which are expressly reserved.

Thank you,
Robyn A. Pellegrino

**ROBYN PELLEGRINO**
**MEMBER**

OFFICE  201.525.6352

EMAIL   rpellegrino@coleschotz.com

Court Plaza North | 25 Main Street | Hackensack, NJ 07601

NEW JERSEY  NEW YORK  DELAWARE  MARYLAND  TEXAS  FLORIDA

VCARD | BIO | COLESCHOTZ.COM

Legal Practice Assistant: Jill Babicz | 201.489.3000 x 5017 | JBabicz@coleschotz.com

---

**From:** Nicholas Parks <nhparks@gmail.com>
**Sent:** Thursday, March 21, 2024 1:29 PM
**To:** Pellegrino, Robyn <RPellegrino@coleschotz.com>
**Subject:** MSUSA Follow-up

**CAUTION:** External Message

Dear Ms. Pellegrino,


Thank you for your time yesterday. As promised, I have attached a copy of the 2019 letter signed by Ms. Sharp. Also, I want to reiterate and clarify a few points from our phone call.


I appreciate that your client wishes to dispute the question of exclusivity; however, I've attached a few emails from Jody Williams that make it appear that your client understood this differently less than a year ago. We have a number of other emails and text messages with similar intimations that I am happy to provide if you don't feel this is sufficient, though I'll note that your client possesses the same. In addition, I expect that we could obtain many similar statements via discovery.


Further, on page 117 of the recent biography of Ms. Sharp, Mr. Williams states, "I have put lots of effort to form a new strategy along with Michael Touby, a good friend, mentor, and also one our business partners to develop a U.S. business plan to create a Marie Sharp's USA office based in North Carolina. This office would be ultimately in charge of servicing all key U.S. accounts nationwide. Before this strategic move, we would sell to over 15 different importers and partners, but there was no return in marketing and promotion of the brand. Instead, it was like a buy-and-sell sales strategy, which would eventually reach a plateau after years of steady growth. In order to adapt and to really improve our U.S. sales, we needed to work with one partner who would lead the push for the brand in the U.S... Since this shift in having our U.S. partner based in North Carolina, we are selling much more than ever...."


In fact, sales have more than doubled since MSFF agreed that MSUSA would be their exclusive US distributor.


From page 180 of the same book, "Marie had formed the entity Marie Sharp's USA for U.S. distribution, to be run out of North Carolina and overseen by her trusted colleague Mike Touby."


Not insignificantly, the MSFF website lists just one distributor for the US - MSUSA.


In addition to breach of contract, it appears that your client has tortiously interfered with the contract between MSUSA and Eve Sales. In addition to the 2022 distribution agreement, there are numerous emails illustrating that MSFF has long known that Eve Sales is a customer of MSUSA, not of MSFF.


As I previously expressed, my client would prefer to avoid litigation. However, the actions of MSFF are suggestive of an unwillingness to accept the reality of the agreement they have with MSUSA. Prior to your client's termination of the existing agreement, it might have been possible to cure the breach simply by ceasing direct sales. If anything, the timing of the termination is further evidence of bad faith on the part of MSFF. As I'm sure you're aware, the combination of the breach, tortious interference, and, most

recently, termination of the distribution agreement, have greatly magnified MSUSA's damages, which continue to increase as MSFF allows this situation to persist.

Despite this, MSUSA is open to drafting a new distribution agreement, but will not accept any agreement that is non-exclusive. If we can clear that hurdle, we can discuss other necessary changes to the proposed document.

If MSFF is not amenable to negotiation of an acceptable and exclusive agreement and an immediate cessation of direct sales, MSUSA will be forced to pursue remedies at law. Further, because of your client's notice of termination of the existing agreement, I hope that you will consider that your response is exceedingly time sensitive.

This email represents an attempt at settlement. Nothing contained herein shall be construed to limit MSUSA's rights at law or equity.

Thanks,

Nicholas Parks, Esq.

Alabama Bar No: 7306M46B

Texas Bar No: 24058032

Phone: 214-991-2642

Fax: 214-441-6425

NOTICE: This email may contain information that is privileged or otherwise confidential. It is intended solely for the holder of the email address to which it has been directed. It should not be disseminated, distributed, copied or forwarded to any other persons. It is not intended for transmission to, or receipt by, any other person. If you have received this email in error, please notify us of the error by reply email or calling (214) 991-2642, and please delete this email without copying or forwarding.

* * * * * *
This e-mail message from Cole Schotz P.C. is private and may contain privileged information. If you are not the intended recipient, please do not read, copy or use it or disclose it to others. If you have received this message in error, please notify the sender immediately by replying to this message and then delete it from your system.